UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* SHELDON BATISTE, <br><br> Plaintiff, <br><br> v. <br><br> SLM CORPORATION, <br><br> Defendant. | Civil Case No. 08-425 (RJL) |

## MEMORANDUM OPINION
(September 24, 2010) [#22]

Plaintiff Sheldon Batiste brings this suit on behalf of the United States pursuant to the *qui tam* provisions of the False Claims Act ("FCA"), 31 U.S.C. §§ 3129-3732 (2006). He alleges that the defendant SLM Corporation, a company known as "Sallie Mae" that administers federally-guaranteed student loans, defrauded the United States by accepting payments from the federal government that were predicated on certifications of compliance with federal law that the defendant knew to be false.[1] The defendant has now moved to dismiss the case. Among the grounds given for dismissal is that the Court lacks subject matter jurisdiction over the plaintiff's action because his is not the first to raise these particular allegations of fraud. The defendant asserts that another plaintiff, acting on behalf of the United States in a *qui tam* action, filed a nearly identical complaint against it in the United States District Court for the Central District of California. As a consequence, the

---

[1] The defendant contends that "Sallie Mae" is actually Sallie Mae, Inc., a wholly-owned subsidiary of the defendant. (Def.'s Mem. in Support of Mot. to Dismiss [#22] at 1 n.1). For purposes of resolving the case at this stage, however, the Court will assume that the defendant is the same entity as Sallie Mae.

defendant contends that this Court is without jurisdiction to hear the recycled claims. Because the Court is persuaded that it lacks jurisdiction in this case, the defendant's Motion to Dismiss is GRANTED.

## BACKGROUND

The plaintiff is a former senior loan associate for Sallie Mae who claims to have direct and independent knowledge of the facts on which he bases his allegations. (Am. Compl. ¶ 5). On March 12, 2008, the plaintiff filed his initial Complaint [#1] against the defendant followed on June 13, 2008 by his First Amended Complaint [#5]. Just over a year later, on July 7, 2009, the United States announced its decision not to intervene in the case. (Notice of Election to Decline Intervention, July 8, 2009 [#16]). Given that announcement, the Court unsealed the First Amended Complaint, (Order, July 15, 2009 [#17]), and the plaintiff promptly served it on the defendant.

At the core of the plaintiff's lawsuit is the allegation that the defendant, in the course of administering federally-guaranteed student loans, systematically granted unwarranted forbearances to borrowers in blatant violation of federal regulations. (Am. Compl. ¶ 16). Specifically, the plaintiff accuses the defendant of regularly giving forbearances to borrowers regardless of their intention to repay the loan and regardless of the reasons given for their inability to make payments. (*Id.*). The plaintiff asserts that the defendant would often grant forbearances even when there was no basis documented in the borrower's file that justified forbearance. (*Id.* ¶¶ 16, 20). The plaintiff further alleges that the defendant would extend forbearances to delinquent borrowers who were not entitled to forbearance as an inducement for those borrowers to make their outstanding payments. (*Id.* ¶ 21). Indeed,

2

to promote this systematic misuse of forbearances, the defendant implemented a system of quotas and bonuses that, according to the plaintiff, incentivized the defendant's employees to extend forbearances to borrowers who were not legally entitled to them. (*Id.* ¶¶ 22-24).

The plaintiff contends that the fraud perpetrated against the United States, which is the basis for his FCA claims, occurred when the defendant falsely certified to the Department of Education and affiliated guaranty agencies that it had complied with the laws and regulations governing federally-guaranteed student loans. To be eligible for obtaining subsidies from the government, the defendant must enter into agreements with the Department of Education and with various guaranty agencies in which it promises to comply with all relevant laws and regulations, including regulations that govern the granting of forbearances. (*Id.* ¶¶ 27, 31). When the time comes to request a payment from the government, the defendant must submit a claim with the Department of Education, and sometimes with the relevant guaranty agency, certifying that it has indeed complied with those laws and regulations. (*Id.* ¶¶ 28-30, 32-33). Because of the defendant's systematic practice of extending forbearances unlawfully to borrowers who were not entitled to them, the plaintiff alleges that all of the certifications of compliance made by the defendant were false statements. (*Id.* ¶ 35). To the extent those false certifications served as the basis for obtaining payments from the government, the plaintiff contends in his 11-count Complaint that the defendant repeatedly violated the FCA. (*Id.* at 19-33). Due to these violations, the plaintiff seeks treble damages, civil penalties, and costs. (*Id.* at 33-34).

In its Motion to Dismiss, the defendant raises three arguments. First, it contends that the Court lacks subject matter jurisdiction over the plaintiff's *qui tam* suit because it is not

the first suit filed in relation to the underlying factual allegations. (Def's Mot. to Dismiss at 5-19). The defendant claims that, at the time the plaintiff commenced this suit, a nearly identical suit had long before been brought against it by a *qui tam* plaintiff in the Central District of California. (*Id.* at 7-10). The defendant also asserts that the Court is without jurisdiction because the plaintiff is not the original source of the factual allegations in the First Amended Complaint. (*Id.* at 18-19). The defendant claims that those facts were readily accessible in the public domain before the plaintiff even filed his initial complaint. (*Id.* at 12-16). Second, the defendant contends that the case should be dismissed, if not for lack of jurisdiction, then for failure to state a claim because the plaintiff failed to allege sufficient facts to raise an inference of fraud. (*Id.* at 20-26). Third, the defendant contends that the plaintiff lacks standing because he sued the wrong company. (*Id.* at 26-29). The defendant represents that it is merely a passive holding company that has no role to play in granting forbearances on federally-guaranteed student loans and that the real party in interest, "Sallie Mae," is merely a wholly-owned subsidiary. (*Id.* at 28).

## DISCUSSION

Because the Court's power to decide this case is a prerequisite to further judicial review, I must first address the defendant's claim, raised pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, that the Court lacks jurisdiction because the plaintiff has failed to satisfy the FCA's threshold requirements for bringing an action on behalf of the United States. "A *qui tam* relator's qualification to proceed is an issue of subject matter jurisdiction." *United States ex rel. Ervin & Assocs., Inc. v. Hamilton Sec. Grp., Inc.*, 332 F. Supp. 2d 1, 4 (D.D.C. 2003). Thus, a relator's failure to clear the necessary statutory

hurdles deprives the court of its power to hear the relator's claims. Under Rule 12(b)(1), "the plaintiff bears the burden of establishing that the court has jurisdiction," *Fowler v. District of Columbia*, 122 F. Supp. 2d 37, 39-40 (D.D.C. 2000) (internal citation omitted), and the Court may consider material outside of the pleadings to determine whether the plaintiff has met its burden, *Ervin & Assocs.*, 332 F. Supp. 2d at 5.

To decide this case, I need to look no further than the FCA's so-called "first-to-file" rule. That rule, as set forth at 31 U.S.C. § 3730(b)(5), provides as follows: "When a person brings an action under [the *qui tam*] subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." This provision is, of course, jurisdictional. Thus, "[i]f an action 'based on the facts underlying' a pending case comes before a court, it must dismiss the later-filed case for lack of jurisdiction." *United States ex rel. Ortega v. Columbia Healthcare, Inc.*, 240 F. Supp. 2d 8, 11 (D.D.C. 2003) (internal citation omitted). The facts underlying the two cases need not be identical. Rather, it is the law of our Circuit that Section 3730(b)(5) "bars any action incorporating the *same material elements* of fraud as an action filed earlier." *United States ex rel. Hampton v. Columbia/HCA Healthcare Corp.*, 318 F.3d 214, 217 (D.C. Cir. 2003) (emphasis added).

What exactly that standard means when applied to actual cases and controversies, however, remains open to some interpretation. Of course, the plain language of the provision makes clear its overarching purpose: "The first-filed claim provides the government notice of the essential facts of an alleged fraud, while the first-to-file bar stops repetitive claims." *United States ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1187

5

(9th Cir. 2001). As our Circuit Court has explained, Congress crafted the FCA to strike a balance "between encouraging whistle-blowing and discouraging opportunistic behavior." *Hampton*, 318 F.3d at 217 (internal quotation marks omitted). To that end, the "first-to-file" rule awards the spoils to those vigilant enough to blow the whistle first, not to every whistle-blower. Once the government has been put on notice of "the essential facts of a fraudulent scheme," duplicative claims serve no purpose since the government "has enough information to discover related frauds" on its own. *Ortega*, 240 F. Supp. 2d at 13 (internal quotation marks omitted). Given these principles, the most sensible test for determining whether two actions allege the same material elements of fraud is the one adopted in *Ortega*: "A later-filed *qui tam* complaint is barred unless (1) it alleges a different type of wrongdoing, based on different material facts than those alleged in the earlier suit; and (2) it gives rise to separate and distinct recovery by the government." *Id.* By focusing not only on the underlying facts, but on the type of wrongdoing, this test does justice to the language of Section 3730(b)(5) barring subsequent "related" actions. In so doing, the test prevents the less vigilant whistle-blower from using insignificant factual variations to allege what is essentially the same fraudulent scheme already made known to the government by an earlier whistle-blower.

Applying the *Ortega* test to the case at hand, I agree with the defendant that the plaintiff's claims are barred by an earlier-filed case in the Central District of California, *United States ex rel. Zahara v. SLM Corp.*, No. CV05-8020 (C.D. Cal. filed Nov. 9, 2005).[2]

---

[2] The defendant reports that this case was subsequently transferred to the Southern District of Indiana, where it was styled as *United States ex rel. Zahara v. SLM Corp.*, No. 1:06-cv-088-SEB-JMS (S.D. Ind. 2006). (Def.'s Mot. to Dismiss at 8 n. 3).

Indeed, that case was filed well over two years *before* the defendant here filed his case in March 2008. Moreover, a comparison of the plaintiff's First Amended Complaint with the *Zahara* Complaint reveals that they allege the same essential wrongdoing by the same defendant. How so?

Here, the plaintiff alleges that the defendant fraudulently obtained subsidy payments from the government by falsely certifying that it had complied with federal regulations pertaining to the granting of forbearances. (Am. Compl. ¶ 35). Among the violations of federal law alleged by the plaintiff is that the defendant regularly gave forbearances to borrowers regardless of their intention to repay the loan and regardless of the reasons given for their inability to pay. (*Id.* ¶ 16). The plaintiff also alleges that the defendant granted forbearances even when there was no documented justification for doing so. (*Id.* ¶¶ 16, 20). Furthermore, the plaintiff alleges that, to promote this systematic misuse of forbearances, the defendant implemented a system of quotas and bonuses to incentivize its employees to extend forbearances to borrowers who were not legally entitled to them. (*Id.* ¶¶ 22-24).

Along the same lines, Zahara alleged that the defendant fraudulently obtained subsidy payments from the government by submitting claims that it knew were based on violations of federal law pertaining to the granting of forbearances. (*Zahara* Compl. [#22-3] ¶¶ 3-6, Ex. B). He further alleged that, to submit those claims, the defendant had to be in compliance with the applicable regulations and that by submitting the claims anyway, even though it knew it was ineligible for payment, the defendant defrauded the government. (*Id.* ¶¶ 72-73). Like the plaintiff here, Zahara claimed that the defendant's employees would routinely "fabricate" forbearances by extending them to borrowers without their assent or

7

knowledge, (*id.* ¶¶ 119-20), and without any documentation that the borrower was even entitled to forbearance, (*id.* ¶¶ 128-29). Zahara further claimed that fabricated forbearances were most commonly granted for chronically delinquent accounts where there was no indication of any intention to repay the loan. (*Id.* ¶ 117). Of course, the similarities do not end there. Like the plaintiff in this case, Zahara also alleged that the defendant had constructed an elaborate system of quotas and bonuses that encouraged its employees to grant as many fabricated forbearances as possible. (*Id.* ¶¶ 25-26, 96-107).

The plaintiff's attempt to differentiate his case from the Zahara case is, to say the least, feeble! The plaintiff argues, for example, that a "critical distinction" between the two cases is that the *Zahara* Complaint failed to make any allegation that the defendant would extend forbearances to delinquent borrowers as an inducement for them to make their outstanding payments. (Resp. to Mot. to Dismiss [#23] at 17; Am. Compl. ¶ 21). Yet, the plaintiff offers no explanation why that distinction is critical. At most, the allegation adds factual support to the plaintiff's overarching claim that the defendant was unlawfully granting forbearances in order to make fraudulent claims for payment from the government. In that sense, the distinction is not critical at all. It is merely a factual variation that in no way changes the essential nature of the wrongdoing already alleged by Zahara and known to the government. The plaintiff also points to the *Zahara* Complaint's failure to mention all the ways in which the defendant must certify its compliance with federal rules and regulations pertaining to forbearances as a condition for obtaining subsidies from the government. (Resp. to Mot. to Dismiss at 15-16). But this distinction is also immaterial given the *Zahara* Complaint's allegation that the right to receive payment is conditioned

upon compliance with all applicable federal regulations. (*Zahara* Compl. [#22-3] ¶ 72, Ex. B). Here again, the factual variation in the plaintiff's First Amended Complaint does not alter the essential nature of the wrongdoing already alleged by Zahara. Because the plaintiff alleges the same type of wrongdoing based on underlying facts that admit of only minor variations, I must conclude that his claims are barred because they incorporate the same essential elements of fraud as Zahara's earlier-filed action.

Undaunted, plaintiff makes a last-ditch effort to clear the "first-to-file" bar by relying on a Sixth Circuit opinion to argue that the *Zahara* case is not a "pending action" for purposes of preempting the plaintiff's later-filed case because Zahara failed to plead his allegations of fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. (Resp. to Mot. to Dismiss at 11-14). I disagree. The plaintiff relies chiefly on *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005), which held that a "complaint's failure to comply with Rule 9(b) render[s] it legally infirm from its inception, and therefore it cannot preempt [a subsequent] action under the first-to-file bar." *Walburn*, 431 F.3d at 972. In *Walburn*, the Sixth Circuit reasoned that "according preemptive effect to a fatally-broad complaint" would not further the FCA's "policy of encouraging whistleblowers to notify the government of potential frauds." *Id.* at 973. Fundamental to *Walburn*'s holding is the premise that an insufficiently-detailed complaint should be dismissed under Rule 9(b) "precisely because it fails to provide adequate notice to the defendant of the fraud it alleges." *Id.* And, of course, a "complaint that fails to provide adequate notice to a defendant can hardly be said to have given the government notice of the essential facts of a fraudulent scheme, and therefore would not enable the government to

9

uncover related frauds." *Id.* Regrettably for the plaintiff, I am not persuaded by the Sixth Circuit's reasoning.

The point of Rule 9(b)'s *heightened* pleading standard is that it provides *more* than what is normally required to give adequate notice of the essential elements of a claim. As such, the *Walburn* court goes too far! Rule 9(b)'s particularity requirement serves a number of purposes in addition to providing sufficient information for the defendant to prepare an adequate response. *United States ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004). For example, it protects potential defendants by discouraging "the initiation of suits brought solely for their nuisance value, and safeguards potential defendants from frivolous accusations of moral turpitude." *Id.* For that reason, a complaint may give adequate notice without also satisfying Rule 9(b). Moreover, it is entirely plausible that a complaint may provide sufficient information to cause the government to launch its own investigation of a fraudulent scheme without providing enough information under Rule 9(b) to protect the defendant's interests. In other words, there might be a situation where there is sufficient notice for the government, but not for the defendant. In that event, it would be proper to dismiss the complaint against the defendant for purposes of Rule 9(b) but to allow the preemption of any subsequent related actions for purposes of the "first-to-file" rule. After all, once the whistle has sounded, the government has little need for additional whistle-blowers. *See United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs., Inc.*, 149 F.3d 227, 234 (3d Cir. 1998) ("[D]uplicative claims do not help reduce fraud or return funds to the federal fisc, since once the

government knows the essential facts of a fraudulent scheme, it has enough information to discover related frauds.").[3]

## CONCLUSION

Because the plaintiff is not the first to raise the essential elements of the fraud alleged in his First Amended Complaint, his claims are barred by the FCA's "first-to-file" rule. Accordingly, this Court lacks jurisdiction, and the defendant's Motion to Dismiss is GRANTED. An Order consistent with this Memorandum Opinion is attached.

RICHARD J. LEON
United States District Judge

---

[3] The Court is not swayed by the plaintiff's point that his is not a parasitic or opportunistic lawsuit because the *Zahara* Complaint was still under seal when he filed his initial Complaint. (Resp. to Mot. to Dismiss at 12). Although the "first-to-file" rule aims to prevent opportunistic filing, that is not its only aim. By awarding the spoils to the first-filer, the rule also aims to encourage the prompt reporting of fraud. Furthermore, as mentioned above, once the government is made sufficiently aware of the alleged fraud so that it can pursue its own investigation into the matter, little is gained by subsequent, duplicative claims from less-vigilant whistle-blowers.